MONROE COUNTY.

JULY TERM, 1882, No. 188.                    MAY 2, 1883.

# Day *et al. v.* Day *et al.* to the use of the Strouds-burg Bank.

1. Lands were sold partly for the consideration of certain judgment notes given by the vendees to the vendors secured by a mortgage on the lands. The vendors assigned some of the notes to a bank to secure discounts. Subsequently, the vendees reconveyed the lands to the vendors by a deed in which the latter agreed " to assume upon themselves, and pay all of the said promissory notes and obligations still due and unpaid, together with all of the liens by judgment and mortgage now upon the said several tracts of land." One of the original vendors and mortgagees then entered satisfaction upon the mortgage of record without paying the notes held by the bank. The lands passed into the hands of *bona fide* purchasers for value, who obtained searches from the recorder of deeds showing no mortgage lien. *Held* in a *scire facias* by the bank upon the mortgage that the purchasers had constructive, if not actual, notice from the deed of the liability of the original vendors to pay the notes, and that neither one of the mortgagees, nor both of them, had any power to satisfy the mortgage so as to impair the security of the bank.

[Day *et al. v.* Day *et al.* to the use of the Stroudsburg Bank.]

2. An offer to prove that the president of the bank agreed to the conveyance with one of the mortgagees, and further agreed that instead of looking to the judgment notes to release these notes and look to the mortgagees for the payment of the indebtedness, was immaterial and properly rejected since the president, in the absence of authority from the board of directors, had no power to make such an agreement.

3. An offer to prove by the mortgagee who entered satisfaction that he conferred with the board of directors of the bank in session in relation to the indebtedness to the bank, and proposed to secure it, and that he received a verbal answer that they would not accept the offer as they had enough real estate was properly rejected as immaterial.

4. The Court charged the jury that "the mortgage being in favor of D. and S. jointly, we hold that under the circumstances of this case an entry of satisfaction by one of the mortgagees is insufficient in law." *Held* that, although this was, perhaps, technical error, the defendants were not injured by it, inasmuch as both of the mortgagees together could not have satisfied the mortgage in such a way as to impair the security of the bank.

5. *Semble* that a debtor, in making payment on a mortgage, should always require the production of the note or bond secured by it.

Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. MERCUR, C. J., absent.

Error to the Court of Common Pleas of *Monroe County.*

*Alias scire facias* sur mortgage by Israel L. Day and Samuel Saylor to the use of the Stroudsburg Bank against Amos Day and Philip Woodring, partners, under the firm-name of Day & Woodring, and Thomas E. Davis and William McMurtry, heretofore doing business as Davis & McMurtry, Henry Crosky and Charles S. Reilly, doing business as Crosky & Reilly, terre tenants.

Pleas, *nil debet;* no lien, and a special plea that Samuel Saylor, one of the original mortgagees, on February 19, 1868, received satisfaction in full of the mortgage upon which the *scire facias* was brought, and gave a receipt therefor on the margin of the record of the mortgage ; and a further plea of receipt of debt and release and satisfaction of lien of mortgage under seal of Samuel Saylor, one of the mortgagees, dated February 19, 1868.

On the trial before MEYERS, P. J., the following facts appeared :

On August 17, 1861, Israel Day and Samuel Saylor, by deed of that date, sold and conveyed to Amos Day and Philip Woodring, co-partners, certain real estate situate in Luzerne, Carbon, and Monroe counties, for the consideration of $1 and of two hundred and seventy-nine promissory notes of the vendees for the payment of $126,000 to the vendors. These notes were of various denominations, and payable at different dates. At the same time, Day & Woodring executed and delivered to Day & Saylor a mortgage of said real estate to secure the payment

of the notes and obligations. The mortgage was recorded in Monroe county, August 23, 1861. December 3, 1861, Day & Saylor agreed with the Stroudsburg bank, in consideration of the allowance of a line of discounts not exceeding $28,000, to place $28,000 of the judgment notes of Day & Woodring with the bank, and thereupon made a formal assignment to the bank of notes to that amount. On August 26, 1864, Amos Day and Philip Woodring, by deed of that date, sold and reconveyed the said real estate to Israel Day and Samuel Saylor. This deed was recorded in Monroe county March 5, 1868. It set forth that "Amos Day and Philip Woodring were unable to comply with the terms and conditions of their purchase and take up and pay the said promissory notes and obligations as they fell due and matured, and are now unable to pay them with the accrued interest thereunto, and have, therefore, proposed to the said Israel L. Day and Samuel Saylor to reconvey to them the said real estate mentioned in the said deed (above referred to) upon condition that the said Israel L. Day and Samuel Saylor shall assume upon themselves and pay all of the said promissory notes and obligations still due and unpaid, together with all of the liens by judgment and mortgage now upon the said several tracts of land as well as those subject to which the said deed was given, as those upon the said lands and not therein mentioned, and all of the indebtedness incurred by the said Amos Day and Philip Woodring in the cutting and stocking the logs and lumber now upon the said premises, manufactured and unmanufactured and unsold, (all which said personal property, manufactured and unmanufactured lumber, has been, by bill of sale, for the consideration therein mentioned, conveyed, assigned, and transferred to the said Israel L. Day and Samuel Saylor by the said Amos Day and Philip Woodring,) which proposition has been accepted, and the said Israel L. Day and Samuel Saylor have, by articles of agreement, covenanted and agreed to assume and pay the said notes and liabilities, judgments, and mortgage liens, and to release and discharge the said Amos Day and Philip Woodring therefrom. Now, this indenture witnesses that the said Amos Day, and Sarah, his wife, and the said Philip Woodring, and Mary Ann, his wife, for, and in consideration of, the sum of $1 unto them in hand paid and of the premises have granted, bargained, &c."

February 19, 1868, Samuel Saylor entered upon the margin of the record of the mortgage the following:

"Received full and complete satisfaction of this mort-

gage, both debt and interest, and I do hereby release the lands and tenements therein mentioned and described from the lien thereof." It was signed and sealed by him and witnessed by the recorder.

On March 2, 1868, Israel L. Day and Samuel Saylor, by deed of that date, sold and conveyed to Thomas E. Davis and William McMurtry, two of the defendants, the undivided one half part of the land situated in Monroe county and described in the deed of Day & Saylor to Day & Woodring, and in the deed of reconveyance by Day & Woodring to Day & Saylor. The consideration was $75,-000 : $20,000 paid in cash, $15,000 secured by notes, and $40,000 by a mortgage on the premises. The notes and mortgage were afterwards paid by Davis & McMurtry. On April 5, 1872, Henry Croskey & Co. obtained five several judgments by confession in Carbon county, each for $7,200, against Israel L. Day, Samuel Saylor, and L. A. Buckley. On May 2, 1872, on certified transcripts of the judgments in Carbon county, judgments were entered in Monroe county. On one of these judgments a writ of *fieri facias* was issued out of the Court of Common Pleas of Monroe county, and all the right, title, and interest of Day & Saylor in the land situate in Monroe county and described in the several deeds already mentioned was levied upon. Upon waiver of inquisition filed, said interest was sold by the sheriff on the 12th of February, 1877, to Henry Croskey and Charles S. Riley for $1,000, and a deed poll for the same executed and delivered to the purchasers.

May 7, 1877. The plaintiff issued the *alias scire facias* upon the mortgage from Day & Woodring to Day & Saylor, under which the present contention arises.

The plaintiff's cashier testified that he had no notice of the satisfaction of the mortgage, and did not know that Day & Woodring had conveyed the property back to Day & Saylor.

*William McMurtry* testified that February 28, 1868, he obtained a certificate under the hand and official seal of the recorder of deeds of Monroe county, that he found no unsatisfied mortgage, or mortgages. against Israel L. Day, Samuel Saylor, Amos Day, and Philip Woodring, or against the firms of Day & Saylor, and Day & Woodring, and that he "undoubtedly inquired of Day & Saylor whether the property was mortgaged."

*Henry Croskey* testified that prior to the confession of the judgments to his firm, he obtained certificates from

the recorder of deeds of Monroe county showing a clear title.

*Samuel Saylor*, being called by the defendants, was asked :

*Q.* If you saw Depue S. Miller, president of the Strouds-burg Bank, after the Stroudsburg Bank had received certain judgment notes of Day & Woodring as collateral security for money borrowed from the bank, or to be borrowed, or for discounts to be made to Day & Saylor by said bank, in relation to the transfer and reconveyance of the mortgaged property from Day & Woodring to Day & Saylor, state what the conversation was, and what arrangement was made with Depue S. Miller, president of said bank, in relation to the reconveying of the mortgaged premises, for the purpose of showing that the bank, through its president, knew that the mortgaged property was to be reconveyed by Day & Saylor, and that the same was satisfactory to said bank, and that the reconveyance was made publicly, and not for the purpose of defrauding the bank.

Objected to as irrelevant and immaterial, and that the bank would not be bound by the acts or declarations of its president unauthorized by the directors of said bank in matters beyond the ordinary sphere of his duties as president. Objection sustained. Exception, (first assignment of error.)

*Q.* State whether or not you came to see D. S. Miller, president of the Stroudsburg Bank, at Stroudsburg, to confer with him, inasmuch as the bank held certain judgment notes secured by a mortgage from Day & Woodring to Day & Saylor, in relation to the reconveyance of the mortgaged property from Day & Woodring back again to Day & Saylor, and whether the said bank, through its president, did not agree to the reconveyance, and that, instead of looking to the judgment notes held by the bank, and to the mortgages already referred to as collateral security for money loaned to Day & Saylor on notes discounted for them, agreed to release the said judgment notes, and look to Day & Saylor for the payment of the said indebtedness secured by said judgment notes, inasmuch as the said property was again to pass into the ownership of said Day & Saylor.

Objected to as irrelevant and immaterial; that the witness is not the proper person to prove the consent of the bank to the arrangement set forth in the defendant's offer ; that the evidence offered by the counsel of the bank is not the best evidence which the case is susceptible of ; and

that the president had no power to make such agreement, as being outside of his ordinary and official duty as president: Brown *v.* Simpson, 2 Watts, 233.   Objection sustained.   Exception, (second assignment of error.)

*Q.* Did you not meet the board of directors in session, and confer with them in relation to the indebtedness of Day & Saylor to the bank, and propose to the bank to secure them, and did you not receive a verbal answer to your offer that they would not accept the offer, as they had enough real estate ?

Objected to as immaterial and irrelevant.   Objection sustained.   Exception, (third assignment of error.)

Counsel for the defendant presented, *inter alia*, the following points which the Court negatived :

*Fourth.* That there is no evidence in this case showing that Thomas C. Davis and William McMurtry, or either of them, had notice of the Stroudsburg Bank holding certain notes as collateral security, secured by the mortgage upon which the *scire facias* in this case was issued before they became purchasers for value of the undivided half, or moiety, of the real estate mentioned in this mortgage, and, therefore, there can be no recovery against them in this suit.

*Fifth.* That there is no evidence in this case showing that Henry Croskie and Charles S. Riley, or either of them, had notice before May 2, 1872, when they caused to be entered up certain judgments against I. L. Day, Samuel Saylor, and Lewis A. Buckley of Nos. 195, 196, 197, 198, and 199, of February term, 1872, that the Stroudsburg Bank held certain judgment notes as collateral security for indebtedness of Day & Saylor, secured by mortgage, upon which the *scire facias* in this case was issued, and, therefore, cannot be affected in this suit by the secret equities which the said bank held, and cannot be affected by notice given after the entering of these judgments.

The Court further charged the jury as follows, *inter alia :*

["The mortgage being in favor of Israel L. Day and Samuel Saylor, jointly, we hold that under the circumstances of this case an entry of satisfaction by one of the mortgagees is insufficient in law.]   Be that as it may, there is another circumstance in this case that will entitle the plaintiffs to a verdict, provided you find that the promissory notes or obligations held by the plaintiffs are part of the same notes for the payment of which Day & Woodring gave the mortgage in suit to Day & Saylor,

and that the plaintiffs were the *bona fide* holders of them for value prior to February 19, 1868, the date of the entry of satisfaction on the mortgage.  Davis & McMurtry are purchasers by deed from Day & Saylor of a part of the real estate which Day & Woodring by deed sold and conveyed to Day & Saylor.  In this deed, as we have already stated, Day & Saylor not only assumed to pay the notes or obligations given by Day & Woodring to them, due and unpaid, together with all the liens by judgment and mortgage upon the several tracts of land so conveyed ; but this assumption and agreement by Day & Saylor to pay said notes, etc., is expressly made part of the consideration of the grant of the premises ; so, also, in the tenendum part of the deed, the premises conveyed are held under and subject to the premises set forth in the deed, and in the receipt to the deed these promissory ———— and the agreement in the deed wherein Day & Saylor stipulated to pay said notes is expressly stated. Prior to the reconveyance by Day & Woodring to Day & Saylor, the former were the payors of the notes, and Day & Saylor the payees.  By the reconveyance, Day & Saylor became the payors of said notes—not to themselves, for that would be an absurdity—and, therefore, the reasonable construction of the clause in the deed of reconveyance already referred to is that Day & Saylor made themselves liable for the notes and mortgage to such persons or party who, at the time, were the lawful holders of any of said notes.  [By the reconveyance, the intention of the parties was to keep the mortgage given to secure the payment of the notes alive, but not for the benefit of Day & Saylor,] for, if that had been the intention, and Day & Saylor had at that time all the notes in possession, there would have been no necessity for the stipulation in the deed.  The deed of Day & Woodring to Day & Saylor being in the line of the title of Davis & McMurtry, they are bound by all the provisions in said deed.  In addition to that, their deed was placed on record three days after the execution and delivery of the deed to Davis & McMurtry, and before $55,000 of the purchase money was paid by the latter, [they, therefore, had constructive notice of the contents of the deed of Day & Woodring to Day & Saylor.]  On both grounds, they had no right to rely on the certificates of the recorder of deeds, [and, though the satisfaction of said mortgage had been signed by both Israel L. Day and Samuel Saylor, it would have been no protection to them, if, at the date of said satisfaction, any of said notes were in the hands of *bona fide*

holders.] It was the duty of Davis & McMurtry, by reason of the matter contained in the deed of Day & Woodring to Day & Saylor, to inquire of the parties to said deed for the purpose of ascertaining whether said notes were in fact paid, either by the production of all the notes, or by satisfactory evidence that all liability on said notes had ceased. [What I have said respecting the defense of Davis & McMurtry is equally applicable to the defense made by Henry Croskey and Charles S. Reilly.] [If, therefore, you are satisfied that the notes held by the plaintiffs were part of the notes which constituted the consideration of the mortgage in suit, and the plaintiffs were the lawful holders of them at the date of the entry of the satisfaction on the mortgage, viz : February 19, 1868, of which facts there can scarcely be any question, the plain-tiffs are entitled to a verdict for the amount of their claim, a statement of which will be furnished to you."]

October 4, 1879, verdict for the plaintiff for $2,659 48, and judgment thereon. The defendants took this writ, assigning for error the rejection of their evidence offered as above, the portions of the charge within brackets, and the overruling of their points.

*William Davis* and *B. F. Fackenthall* for plaintiffs in error.

1. We contend that when Davis & McMurtry bought, the mortgage being satisfied on the record, they were innocent purchasers for a valuable consideration, without notice of the alleged lien of the bank.

2. That they made all the inquiries incumbent on them to make.

3. That they did not have actual notice that the Stroudsburg Bank held any of the notes secured by the mortgage.

4. That the title papers did not give them constructive notice that any of said notes were outstanding and unpaid.

5. And that the bank was guilty of laches in not putting their claim on record, and for that reason they cannot recover : Hardy *v.* Reeves, 5 Vesey, 426 ; Cordwell *v.* Mackrille, 2 Eden, 347 ; Jones *v.* Smith, 1 Hare, 52 ; Ware *v.* Lord Egmont, 4 De. Gex., McN. & G., 469 ; Sellers *v.* Benner, 9 W. N. C., 88 ; Twelves *v.* Williams, 3 Wharton, 491 ; Wilson *v.* McCullough, 11 Harris, 440 ; Sergeant *v.* Ingersoll, 7 Barr, 340 ; Boggs *v.* Varner, 6 W. & S., 474 ; Brown *v.* Simpson, 2 Watts, 243 ; Mott *v.* Clark, 9 Barr, 404 ; Wethrill's Appeal, 3 Grant, 287 ; Fisher *v.* Knox, 1 Harris, 622.

[Day *et al. v.* Day *et al.* to the use of the Stroudsburg Bank.]

*S. Holmes* for defendants in error.

We do not deny the general principle as claimed by counsel for plaintiff in error, and as recognized by the Court below in their opinion discharging the rule for a new trial. As a general proposition, it is doubtless true that satisfaction by one of two or more co-mortgagees is satisfaction as to all, but this applies only where the mortgagees continue to be the holders of the obligations secured by the mortgage. Where these obligations have been assigned, and the mortgagor knows of such assignment, he must pay, not to the mortgagee, but to his assignee. A payment to, and discharge by, the mortgagee is void; and a subsequent purchaser of the premises bound by the mortgage, with constructive notice of the facts, or of such other facts, as should induce a prudent man to make inquiries which, properly pursued, would lead to the facts above stated, takes the land subject to the mortgage: 2 Jones on Mortgages, § 956; White *v.* Hampton, 13 Iowa, 259; Purdy *v.* Huntington, 42 N. Y., 334; Wilhelmi *v.* Leonard, 13 Iowa, 330; Heath *v.* Page, 12 Wr., 130.

OCTOBER 1, 1883. The opinion of the Court was delivered by STERRETT, J.

The fact that the Stroudsburg bank, the beneficial plaintiff below, was the owner and *bona fide* holder of bonds secured by the mortgage in suit, prior to and at the time the entry of satisfaction was made, has been conclusively established by the verdict. It is not pretended that the claim of the bank, for which the notes were assigned and held as security, has ever been paid; and unless there was error in the rejection of evidence or in the charge of the Court, the verdict is right and the judgment entered thereon should not be disturbed. There was no error in rejecting the offers of evidence referred to in the first, second, and third specifications. In the absence of authority from the board of directors, the president of the bank had no power to make an agreement such as the defendants proposed to prove. It was beyond the sphere of his official duties as president; and it is not pretended that he was authorized by the board to thus release the security held by the bank. The offer to prove that Mr. Saylor met the board of directors in session, and conferred with them in relation to the indebtedness of Day & Saylor, and proposed to secure them, &c., was too vague and indefinite, as well as immaterial and irrelevant.

There was, perhaps, technical error in charging as complained of in the fourth specification; but, upon the undisputed facts of the case, the defendants below were not prejudiced thereby. As a general proposition it is undoubtedly true that satisfaction by one or more co-mortgagees is good as to all, but this principle applies only where the mortgagees continue to be the holders of the note or obligation secured by the mortgage. Where the debt or instrument secured by the mortgage has been assigned, and the mortgagor is aware of that fact, he must pay, not to the mortgagee, but to his assignee. Under such circumstances, payment to the mortgagee and entry of satisfaction by him is simply a nullity as to the *bona fide* owner of the security; and a subsequent purchaser of the mortgaged premises, with actual or constructive notice of the facts, takes the land subject to the mortgage. In Jones on mortgages, Vol. 2, sec. 956, it is said, that in making payment on a mortgage the debtor should always require the production of the note or bond secured by it, otherwise it may turn out that this evidence of the debt has been assigned, or perhaps that a formal assignment of the mortgage has been made and recorded; and, although the mortgagor is protected in making payment to the mortgagee until he has received notice of the assignment of the mortgage, yet this notice may be constructive, as well as actual, and the debtor always incurs much risk in making payments without having actual knowledge that the person to whom he makes payment actually holds the mortgage at the time.

It is, moreover, an undisputed fact that Day & Saylor were not merely co-mortgagees at the time the latter acknowledged satisfaction of the mortgage. They were then the owners, by conveyance, of the land bound by the mortgage. So far as their interest in the mortgage was concerned, it had already merged in the fee acquired by the deed of reconveyance; but neither the reconveyance nor the entry of satisfaction could, in the least degree, affect the bank as assignees of a portion of the bonds secured by the mortgage. In addition to all this it is a fact, patent upon the face of the deed of reconveyance, that Day & Saylor assumed the payment of all the outstanding bonds secured by the mortgage. It is very clear, therefore, that neither one of the mortgagees, nor both of them together, had any power to satisfy the mortgage so as to impair thereby the security of the bank. Hence it follows, in view of the fact established

[Day *et al. v.* Day *et al.* to the use of the Stroudsburg Bank.]

by the verdict, that the error complained of in the fourth specification was harmless.

There was no error in charging, as complained of in the fifth specification, that, "by the reconveyance from Day & Woodring to Day & Saylor, the intention of the parties was to keep alive the mortgage given to secure the payment of the bonds, but not for the benefit of Day & Saylor, and that of this fact Davis & McMurtry, *terre tenants*, had constructive notice."

It is very evident from the deed itself that such was the intention of the parties ; and it is equally clear that all the *terre tenants* are affected with constructive, if not actual, notice of everything contained in the deed. It was directly in the line of the title they acquired, and whether it was recorded or not at the time they purchased, it was their duty to see and examine it, and the presumption is that they did do so. This leads to the conclusion that they knew the parties from whom they were purchasing had assumed the payment of the outstanding bonds. It was, therefore, their duty to inquire and satisfy themselves that the bonds had been paid. They had no right to rely upon the statement, written or oral, of their vendors, Day & Saylor. Having agreed to take up the bonds as consideration in part of the reconveyance to them, they practically occupied the position of obligors. If the *terre tenants* failed to insist upon the production of the outstanding bonds or other satisfactory evidence that they were paid, they assumed a risk the consequences of which they must bear.

The remaining assignments of error are to the charge of the Court in relation to the effect of the entry of satisfaction, and the subject of notice to the *terre tenants* of the want of authority in Day & Saylor, or either of them, to satisfy the mortgage. We fail to discover any error in the charge of the learned judge in relation to either of the matters embraced in these assignments, and hence they are not sustained. The instructions on all the essential points in the case were so full and accurate that it is unnecessary to notice the specifications in detail.

Judgment affirmed.